## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Philip Quow and Clyde Reaves, on behalf of themselves and all other persons similarly situated, | |
| Plaintiffs, | DOCKET NO. 15-CV-9852 (KHP) |
| - vs. – | |
| Accurate Mechanical Inc., John O'Shea, and Daniel Reilly, | |
| Defendants. | |

**MEMORANDUM OF LAW OF PLAINTIFFS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT AND APPROVAL OF COUNSEL'S FEES AND COSTS**

SAMUEL & STEIN
David Stein
David Nieporent
38 West 32nd Street, Ste. 1110
New York, New York 10001
(212) 563-9884

Attorneys for Plaintiffs,
the FLSA Collective and Class

## **TABLE OF CONTENTS**

Section                                                                                                    Page

Table of Contents ...................................................................................................................... i

INTRODUCTION ..................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................ 2

    I.      Procedural history ....................................................................................................... 2

    II.    Results of Notice ......................................................................................................... 2

SETTLEMENT TERMS ............................................................................................................ 3

LEGAL ARGUMENT ............................................................................................................... 3

    I.      Final Approval of the Settlement is Appropriate ...................................................... 3

    II.    The Settlement is procedurally fair ........................................................................... 5

    III.   The Settlement is substantively fair, adequate, and reasonable ............................... 5

          A.  The Reaction of the Class Has Been Positive (Grinnell Factor 2) ........................... 6

          B.  Litigation through trial will be complex, costly, and long (Grinnell Factor 1) .. 8

          C.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case
              Responsibly (Grinnell Factor 3) ............................................................................ 9

          D.  Plaintiffs would face real risks if the case proceeded, including the difficulty
              of maintaining a class through trial (Grinnell Factors 4, 5, and 6) ...................... 9

          E.  Defendants' questionable ability to withstand a greater judgment weighs in
              favor of Settlement approval (Grinnell Factor 7) ................................................ 10

          F.  The Settlement Fund is Substantial, Even in Light of the Best Possible
              Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9) .... 10

    IV.   The Court should approve service awards to the Named Plaintiffs ......................... 12

    V.    Class counsel are entitled to a reasonable fee for their services, as well as
         reimbursement for their costs ................................................................................. 14

          A.  Class Counsel Expended Extensive Time and Labor on Behalf of Plaintiffs and
              the Class ................................................................................................................. 15

          B.  The large and complex nature of this litigation warrants the award of
              attorneys' fees being requested ............................................................................ 16

C.  Class Counsel took on a large amount of risk in prosecuting this case..............16

D.  Class Counsel provided excellent representation........................................................17

E.  The requested fees are reasonable in relation to the settlement........................18

F.  Public policy supports approving the requested fees...............................................19

G.  Class Counsel is entitled to reimbursement of reasonable litigation costs.....20

H.  The lodestar cross-check method supports approving the requested fees and costs.................................................................................................................................................21

VI.  The Settlement Administrator is Entitled to Payment for its Services......................23

CONCLUSION ...............................................................................................................................................23

| CASES | PAGE |
|---|---|

*A.H. Phillips, Inc. v. Walling*, 324 U.S. 490(1945)..........................................................................19

*Armstrong v. Board of School Directors of City of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980)..............................................................................11

*Banyai v. Mazur*, 2008 WL 5110912, at *4 (S.D.N.Y. Dec. 2, 2008) ....................................16

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013)................................................16

*Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164 (E.D.N.Y. 2012) ..............7

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ...........................................5-8

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)..........................................................8

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011)..................22

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980)......................................................19

*Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ...................14

*Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337 (S.D.N.Y. 2012)............16

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ...................................................................11

*Flores v. One Hanover, LLC*, 2014 U.S. Dist. LEXIS 78269 (S.D.N.Y. June 9, 2014) .........7

*Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*,
    2013 WL 5745102 (W.D. Wis. Oct. 23, 2013) ...............................................18

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005).........................5,10, 13, 14

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. March 24, 2008) ...........................18-19

*Glatt v. Fox Searchlight Pictures, Inc.*, 791 F. 3d 376 (2nd Cir. July 2, 2015) ....................10

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2nd Cir. 2000) ...........................14-15,20

*Guippone v. BH S & B Holdings, LLC*, 2011 WL 5148650  (S.D.N.Y. Oct. 28, 2011).......13

*Guzman v. Joesons Auto Parts*, 2013 WL 2898154 (E.D.N.Y. June 13, 2013) ...............17, 18

*Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014)..............7

*Herman v. Davis Acoustical Corp.*, 196 F.3d 354 (2nd Cir. 1999).......................................14

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ...............................10-11

*In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............8-11

*In re Boesky Sec. Litig.*, 888 F. Supp. 551 (S.D.N.Y. 1995); .......................................................21

*In re Lloyd's Am. Trust Fund Litig.*,
    2002 U.S Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ........................................................22

*In Re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................5

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004).......................................9

*Jemine v. Dennis*, 901 F. Supp. 2d 365 (E.D.N.Y. 2012) ..............................................................16

*Joel A. v. Giuliani,* 218 F.3d 132 (2d Cir. 2000).......................................................................4, 12

*Johnson v. Brennan*, 2011 U.S. Dist LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) ...................................6

*Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ......................................................16-17

*Khait v. Whirlpool Corp.*, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ..........................................14

*Kuzma v. Internal Revenue Service*, 821 F.2d 930 (2d Cir.1987)..................................................20

*LeBlanc- Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998)........................................................20

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169 (S.D.N.Y. 2014). ......................................................4

*Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002). .................................6,22

*Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)..................6

*Matheson v. T-Bone Restaurant, LLC,*
    2011 U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011) ........................................................7

*McDaniel v. Cty. Of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ...................................................14

*Mentor v. Imperial Parking Systems, Inc.*, 2010 WL 5129068 (S.D.N.Y. Dec. 15, 2010) ...........14

*Meredith Corp. v. SESAC, LLC*, 2015 U.S. Dist. LEXIS 20055 (S.D.N.Y. Feb. 19, 2015)............ 4,5,8

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009)........................................................................12

*Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972) ..................................................................11

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*
    688 F.2d 615 (9th Cir. 1982)...........................................................................................11-12

*Reyes v. Buddha-Bar NYC*, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ............................................ 14

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
  2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) ................................................................. 6

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) ............................................................... 12

*Rotuna v. West Customer Mgmt. Group, LLC*,
  2010 WL 2490989 (N.D. Ohio June 15, 2010) ........................................................................ 18

*Rubin v. Assicurazioni Generali S.P.A.*, 290 F. App'x 376 (2d Cir. 2008) .................................... 7-8

*Sand v. Greenberg*, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ......................................................... 19

*Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2nd Cir. 1999) .................................................. 21,22

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) ....................................... 13

*Spicer v. Pier Sixty LLC*, 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) .................................... 18

*Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34 (D. Me. 2005) ...................................................... 7

*Thornhill v. CVS Pharmacy, Inc.*,
  2014 U.S. Dist LEXIS 37007 (S.D.N.Y. March 20, 2014) ...................................................... 18

*Tiro v. Pub. House Investments, LLC,* 2013 U.S. Dist. LEXIS 129258
  (S.D.N.Y. Sept. 10, 2013) ........................................................................................................ 6-7

*Torres v. Gristede's Operating Corp.*,
  2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) aff'd, 519 F. App'x 1 (2d Cir. 2013) .............. 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) ...................................... 21-22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ....................... 4,5,11,14,22

*Willix v. Healthfirst, Inc.*, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...................................... 19

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23 ................................................................................................................................ *passim*

**SECONDARY SOURCES**

*McLaughlin on Class Actions* ........................................................................................................ 7

Herbert B. Newberg & Alba Conte,
  *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002) .......................... 4, 11

**INTRODUCTION**

Subject to Court approval, the parties have settled this long-running collective and putative class action lawsuit against defendants Accurate Mechanical Inc. and Daniel Reilly[1].  The proposed settlement resolves all claims in the lawsuit alleging that Defendants failed to pay their plumbers and sprinkler mechanics correctly pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and the New York Labor Law ("NYLL"). On February 12, 2018, the Court preliminarily approved the Parties' proposed settlement and authorized the issuance of Notice to Class Members. (See Dkt. No. 96).

Plaintiffs now bring this unopposed motion for final settlement approval.  The members of the FLSA collective and putative FLSA class have been informed of and have responded favorably to the parties' settlement in this action.  None of the 91 class and collective members on whose behalf the settlement was reached have either requested exclusion from the class settlement, or filed any objections.  As of the filing deadline, 46% of the class members who were required to submit claim forms to participate in the settlement have done so.  Given that the settlement class includes numerous individuals who worked for defendants for only a short time as much as six years ago, this is a successful result.

What is more, the settlement provides significant monetary compensation while avoiding the delay and costs associated with a trial and likely appeal. Indeed, the gross settlement amount of $1,375,000 represents approximately 80% of maximum possible damages. For these reasons, as well as those discussed herein, the parties' settlement is a fair, reasonable, and adequate resolution of this bona fide dispute. The Court should (1)

---

[1] All claims against defendant John O'Shea have been dismissed with prejudice, as defendants provided proof that he had not been involved with the business for many years before the Class Period began.

grant final settlement approval, (2) approve the service payments to the Named Plaintiffs of $3,500 each; (3) approve an award of attorneys' fees and costs in the amount of $457,943.22; (4) approve an award of costs in the amount of $1,170.34; (5) approve payment to the Settlement Administrator of up to $32,317.00 in fees for the administration of the settlement – half of which is to come from the Settlement Amount and half directly from Defendants; and (6) enter judgment dismissing the federal action with prejudice in accordance with the Settlement Agreement, while retaining jurisdiction to enforce the terms of the settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Procedural history

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in the Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (Dkt. No. 92), and is not repeated here.

On February 12, 2018, the Court preliminarily approved the Parties' proposed settlement. (See Dkt. No. 96). The Court also approved the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (the "Notice") and Claim Form (together, the "Notice Packet") and authorized the mailing of the Notice Packet to the Class Members. (See id.)

### II.  Results of Notice

On April 19, 2018, the Settlement Administrator mailed the Notice Packet to the Class Members. (American Legal Claims Services LLC ("ALCS") Decl. ¶ 5). The Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information.

The Class List contained 91 unique Class Members (ALCS Decl. ¶¶ 3,7,8), 86 of which ultimately turned out to have locatable addresses. After re-sending the Notice Packet to two Class Members for whom the postal service provided forwarding addresses, the Settlement Administrator performed "skip traces" for the 7 other undeliverable Notice Packets, and was able to locate updated addresses for 5 of them. There were therefore only 7 Class Members – 7.7% of the class – for whom the Notice Packets were undeliverable due to lack of valid addresses.

As of the June 18, 2018, Claim Deadline, 42 valid Claim Forms – representing 46% of Class Members, and 50% of the Class Members whose packets were deliverable – had been returned. The response to the Notices has been overwhelmingly positive. No objections were filed, and no individuals requested to be excluded from the Settlement.

## **SETTLEMENT TERMS**

The terms of the Settlement Agreement, which were preliminarily approved by the Court on February 12, 2018 (see Dkt. No. 96), are summarized in Plaintiffs' Motion for Preliminary Approval of Class Settlement (Dkt. No. 92) and are not repeated here.

## **LEGAL ARGUMENT**

### I.     **Final Approval of the Settlement Is Appropriate**

Because this is a class action, and because it involves FLSA claims, the Court must approve the settlement. The procedure for approval includes three distinct steps:

1.   Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval, including preliminary approval of any agreed settlement classes;

2.   Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.   A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq*. (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. The Court has already preliminarily approved the proposed settlement (Dkt. No. 51) and notice of settlement has already been disseminated to all affected class members (*see* Factual and Procedural Background Section II *supra*).

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Courts may approve proposed settlements of class actions upon a determination that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Meredith Corp. v. SESAC, LLC*, 2015 U.S. Dist. LEXIS 20055 (S.D.N.Y. Feb. 19, 2015) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)); see Fed. R. Civ. P. 23(e). Proposed settlements under the FLSA are "examined with less scrutiny than a class action settlement; the court simply asks whether the proposed settlement reflects a fair and reasonable compromise of disputed issues that were reached as a result of contested litigation." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014).

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order is detailed in the Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement. It is clear from the facts of this case that the parties reached this settlement only after exchanging essential information through the discovery process, which allowed each side to assess the potential risks of continued litigation, and robust settlement negotiations, including multiple appearances

before the Court. In other words, the settlement was reached as a result of supervised arm's-length negotiations between experienced, capable counsel.   The settlement in this case is fair, adequate, and reasonable, not a product of collusion, and is a fair and reasonable resolution of a bona fide dispute. It should be approved.

## II.    The settlement is procedurally fair.

"A presumption of fairness, adequacy, and reasonableness' may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (quoting *Wal-Mart Stores*, 396 F.3d at 116); see *Meredith Corp*., 2015 WL 728026, at *8. "'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In Re Telik, Inc. Sec. Litig*., 576 F. Supp. 2d 570 (S.D.N.Y. 2008) (quotation omitted).

Here, the presumption of procedural fairness is plainly warranted. The settlement at issue was reached after almost three years of hard-fought litigation and after the completion of class discovery, permitting class counsel to fully evaluate the strength of the case. Further, class counsel are experienced in litigating wage-and-hour cases, including complex hybrid-class and collective actions like the instant case. Counsel — who evaluated the risks attendant with continued litigation and collection on any judgment believe this is procedurally fair.

## III.    The Settlement is substantively fair, adequate, and reasonable.

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974).  The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings

and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

With the exception of the factor evaluating the reaction of the class, the Grinnell factors were discussed at length in Plaintiffs' brief in support of preliminary settlement approval. Accordingly, Plaintiffs discuss the reaction of the class below and summarize the remaining factors, highlighting any recent and relevant developments. Without question, these factors warrant final settlement approval. Moreover, because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012)*,* satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement.

### A.  The Reaction of the Class Has Been Positive (Grinnell Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Tiro v. Pub. House Investments, LLC*, 2013 U.S. Dist. LEXIS 129258, at *7 (S.D.N.Y. Sept. 10, 2013) (quoting *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). Indeed, "[t]he lack of class member objections 'may itself be taken as evidencing the fairness of a settlement.'" *Johnson v. Brennan*, 2011 U.S. Dist LEXIS 105775, (S.D.N.Y. Sept. 16, 2011) (quoting *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2003 U.S. Dist. LEXIS 8239, at *1 (S.D.N.Y. May 15, 2003)).

Similarly, the presence of "relatively few" requests for exclusion – here, none –supports a settlement. *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *7.

The reaction of the Class in this case weighs in favor of settlement approval. After the notice process described above, no class member requested exclusion or objected.  This strongly supports settlement approval. See e.g., *Tiro*, 2013 U.S. Dist. LEXIS 129258, at *7 (approving settlement where no class member objected and less than 1% of the class requested exclusion); *Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012) (approving settlement where no class member objected and 1.8% of class requested exclusion); *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) (approving settlement where no class member objected and 1% of class requested exclusion).

Additionally, the response rate from Class Members has been positive, reaching a 46% claims rate to date (50% of people who received a claim form in the mail). This is a strong result. See e.g., *Flores v. One Hanover, LLC*, 2014 U.S. Dist. LEXIS 78269 (S.D.N.Y. June 9, 2014) (stating, "This favorable response demonstrates that the class approves of the settlement and supports final approval," where "31 percent of FLSA settlement class opted-in to the settlement.") (quoting *Matheson v. T-Bone Restaurant, LLC*, 2011 U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011); *Chavarria, LLC*, 875 F. Supp. 2d at 173 (approving settlement where 41% of class members affirmatively opted into FLSA collective that had been certified for settlement purposes); see also 2 *McLaughlin on Class Actions* § 6:24 (11th ed.) ("Claims-made settlements typically have a participation rate in the 10-15 percent range.") (*citing cases*); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 44 (D. Me. 2005) (quoting a claims administrator opining that "claim return rates are 10% or less in the vast majority of settlements that require filing a notice of claim."); *Rubin v. Assicurazioni*

*Generali S.P.A.*, 290 F. App'x 376, 377 (2d Cir. 2008) (affirming settlement approval over argument that settlement "releases claims held by class members who will not be compensated under the settlement because they have not filed claims.").

In sum, Class Members' reaction to the settlement has been overwhelmingly positive and supports settlement approval.

### B. Litigation through trial will be complex, costly, and long (Grinnell Factor 1)

"The greater the 'complexity, expense and likely duration of the litigation,' *Grinnell*, 495 F.2d at 463, the stronger the basis for approving a settlement." *Meredith Corp.*, 2015 U.S. Dist. LEXIS 20055.

The complexity of this hybrid class and collective action case is highlighted by its lengthy history, going on more than two and a half years, and involving almost a hundred Class Members.  By reaching a favorable settlement before dispositive motions or trial, Plaintiffs seek to avoid yet additional significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Because depositions have not yet been undertaken, getting to trial would take some time.  And because there are completely missing records for a significant portion of the class, establishing class damages could be expensive and time-consuming.  Given the possibility of appeal of any resulting judgment, it is reasonable to project that it could be another year or more before resolution, in the absence of settlement.  This settlement, on

the other hand, makes monetary relief available to Class Members in a prompt and efficient

manger. Therefore, the first *Grinnell* factor weighs in favor of settlement approval.

### C. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3).

The proper question is "whether counsel had an adequate appreciation of the merits

of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3rd

Cir. 2004). The pretrial negotiations and discovery must be sufficiently adversarial that

they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts

helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal

quotations omitted).  As described in Plaintiffs' Motion for Preliminary Approval, this factor

weighs heavily in favor of settlement; paper discovery is essentially complete, and Class

Counsel interviewed dozens of current and former employees to gather information

relevant to the claims in the litigation, and obtained, reviewed, and analyzed hundreds of

pages of employment records from Plaintiffs and from Defendants.

### D. Plaintiffs would face real risks if the case proceeded, including the difficulty of maintaining a class through trial (Grinnell Factors 4, 5, and 6).

Although Plaintiffs believe their case is strong, it is subject to risk as to damages. As

noted above, this is a complex hybrid case involving both factual and legal disputes.  In

weighing the risks of establishing liability and damages, the Court "must only weigh the

likelihood of success by the plaintiff class against the relief offered by the settlement." *In re*

*Austrian*, 80 F. Supp. 2d at 177 (internal quotations omitted).  Trying the factual and legal

issues on the merits would involve significant risks to Plaintiffs because of the fact-

intensive nature of proving liability under the FLSA and NYLL under the Plaintiffs' theory in

this case.  In addition, even if the Court adopted Plaintiffs' theory of liability, Defendants

might argue that whether each Class Member actually worked overtime rather than actually incurring expenses for which he was reimbursed requires individual determinations making the case unsuitable for class handling.

Finally, even with a favorable outcome at trial, there is a risk that an appeal could undo all or part of any judgment. This is particularly so given the ever-evolving state of the law on wage and hour issues such as these. See, e.g., *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F. 3d 376 (2nd Cir. July 2, 2015) (reversing summary judgment, conditional certification of FLSA collective, and class certification of NYLL class).   The proposed settlement alleviates this uncertainty. These factors weighs heavily in favor of settlement approval.

### E.  Defendants' questionable ability to withstand a greater judgment weighs in favor of Settlement approval (Grinnell Factor 7).

While Defendants might be able to withstand a greater judgment than the $1,375,000 Settlement Amount, there is no guarantee of that; Defendants required an extended installment plan in order to pay the Settlement Amount.   Other than some real property, which would not be valuable enough to satisfy a larger judgment, Defendants have few tangible assets.   Even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). This factor does not hinder this Court from granting settlement approval.

### F.  The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9).

"The adequacy of the amount achieved in settlement is not to be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of Plaintiffs' case.'" *In re "Agent Orange" Prod. Liab. Litig.*,

597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)). The ultimate question is whether the settlement falls within a "range of reasonableness" in light of "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent" in litigation." *Wal–Mart Stores*, 396 F.3d at 119). Here, the settlement does.

Plaintiffs' counsel has determined that this case presents significant litigation risks that militate toward substantial compromise. Defendants have agreed to settle this case for a substantial amount, $1,375,000. The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater – Plaintiffs have calculated that it could be worth as much as $1,700,000 – if Plaintiffs succeeded on all claims at trial and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve use of a 'mathematical equation yielding a particularized sum'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" Id. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

The key factor is whether the proposed settlement is the result of arm's-length negotiations by experienced counsel; if so, it is presumed to be fair and reasonable. *See Newberg on Class Actions* § 11.41. *See also Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625

(9th Cir. 1982) (the fairness of a proposed settlement should not be judged by a "hypothetical or speculative measure of what might have been achieved by the negotiators").

Here, each Class Member will receive payment based upon the number of overtime hours that Defendants' records seemingly reflect Class Members having worked, plus reasonable extrapolations for those Class Members for whom records do not exist, plus a significant portion (30%) of liquidated damages, as well as an additional sum for Wage Theft Prevention Act damages.  As explained in detail above, the amount that each class member will receive reflects a careful balancing of the strengths of their underlying claims and the risks that their claims would not ultimately prevail. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Accordingly, all of the *Grinnell* factors weigh in favor of issuing final approval of the settlement. Because the settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (*quoting Joel A.,* 218 F.3d at 138-39, the Court should grant its preliminary approval.

**IV.     The Court should approve service awards to the Named Plaintiffs.**

The Named Plaintiffs/Class Representatives, Philip Quow and Clyde Reaves, each seek service awards for their work and willingness to represent the class.   Service payments "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) (citing *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y.

1997)). Recognition payments are "particularly appropriate in the employment context." *Frank* 228 F.R.D. at 187 (W.D.N.Y. 2005). When, as here, the Plaintiffs are "former or current employee[s] of the defendant . . . by lending [their] name to the litigation, [they have], for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Id.; see also *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."). Further, "the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person." *Guippone v. BH S & B Holdings*, *LLC*, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011).

No Class Member has objected to the Service Awards, which are consistent with payments made to named plaintiffs and discovery representatives in this Circuit, other jurisdictions, and in other wage and hour cases.  Throughout the course of this lengthy litigation, the Named Plaintiffs have diligently pursued the best interests of the Class, patiently waiting over three years, recruiting other employees as witnesses, providing hundreds of pages of documents and assisting Counsel in interpreting thousands of pages of defendants' documents, although they likely could have achieved a quick result for themselves had they decided to take a quick settlement rather than serving as representative plaintiffs to allow this litigation to proceed on a class basis.

In light of the foregoing, the requested service payment of $3,500 to each Named Plaintiff is more than justified. The service payments represent in total only 0.5% of the overall settlement, less than what this Court has approved for other class representatives in wage and hour settlements, and the amounts awarded to each Named Plaintiff are

reasonable.  See, e.g., *Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at *8 (S.D.N.Y.

Dec. 21, 2010) *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards of

$15,000 to each of 15 named plaintiffs); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *9

(E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in

wage and hour class action); *Mentor v. Imperial Parking Systems, Inc.*, 2010 WL 5129068, at

*5 (S.D.N.Y. Dec. 15, 2010) (approving service payments of $40,000 and $15,000 in FLSA

and NYLL settlement); *Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175, at *3 (S.D.N.Y.

Sept. 10, 2009) (approving service payments of $25,000 and $10,000).

### V.      Class counsel are entitled to a reasonable fee for their services, as well as reimbursement for their costs.

In a class action settlement, the Court "may award reasonable attorney's fees and

nontaxable costs . . . authorized by law." Fed. R. Civ. P. 23(h). What constitutes a reasonable

fee is within the sound discretion of the district court. See *Herman v. Davis Acoustical Corp.*,

196 F.3d 354, 356 (2d Cir. 1999). Where, as is here, a common fund is created for the

benefit of a class, courts may employ either the percentage-of-fund method or the lodestar

method in determining a reasonable fee. See *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43,

50 (2d Cir. 2000). "The trend in this Circuit is toward the percentage method, which

directly aligns the interests of the class and its counsel and provides a powerful incentive

for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc.,* 396

F.3d at 121 (2nd Cir. 2005) (internal citation and quotation omitted).  See also *McDaniel v.

Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (following percentage of fund

method); *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009)

(same).  In wage and hour class action lawsuits, public policy favors a common fund

attorneys' fee award. *Frank.*, 228 F.R.D. at 189 (W.D.N.Y. 2005).

The Settlement Agreement entered into in this case provides that Class Counsel will petition the Court for an award of up to one-third of the Settlement Amount, after reimbursement for litigation costs and expenses up to $1,170.34, as well as payment of class administration fees.  No Class Member objected to this request, which is consistent with the retainer agreements between Class Counsel and the Named Plaintiffs.  This request is evaluated under the *Goldberger* factors set forth by the Second Circuit: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. Each of these factors supports the reasonableness of the requested fees and costs.

### A. Class Counsel Expended Extensive Time and Labor on Behalf of Plaintiffs and the Class.

The procedural and factual history of this case up to the Court's Preliminary Approval Order is detailed in the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement.  Before the initiation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Class Counsel focused their investigation and legal research on the underlying merits of the Named Plaintiffs' and Class Members' claims, the damages to which they were entitled, and the propriety of class and collective action certification, as well as issues related to Defendants' finances and the collectability of a large award. Class Counsel spoke with over a dozen potential Class Members to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other relevant information. Class Counsel also obtained and reviewed hundreds of documents from the Named Plaintiffs related to their employment with Defendant, including pay records, time records,

and other related documents, hundreds more documents from other Class Members, and reviewed and analyzed thousands of pages of documents from defendants. Plaintiffs' Counsel expended substantial time and labor on this case over the past two and a half years, with no pay and with no guarantee of any monetary recovery. Accordingly, this factor weighs in favor of awarding Class Counsel's requested fees.

### B. The large and complex nature of this litigation warrants the award of attorneys' fees being requested.

Hybrid FLSA and state wage-and-hour cases are often large and complex. *See Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("courts have recognized that FLSA cases are complex and that "[a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action. . . ").  This case was no different, consisting of an FLSA collective action and NYLL state class action, covering almost 100 individuals. The size and difficulty of the issue in a case are significant factors to be considered in making a fee award. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013); *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) ("in a class action suit, as here, the large number of plaintiffs increase the complexity of the litigation"). Thus, this factor favors awarding Class Counsel the requested fees.

### C. Class Counsel took on a large amount of risk in prosecuting this case.

The risk of the litigation is "perhaps the foremost factor" in establishing the proper fee." *Banyai v. Mazur*, 2008 WL 5110912, at *4 (S.D.N.Y. Dec. 2, 2008). "A lawyer whose compensation is contingent on services can be expected to receive more than she would receive if she were charging an hourly rate." Id. (citing *Jones v. Diamond*, 636 F.2d 1364,

1382 (5th Cir. 1981)). Courts have noted that, "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Grinnell Corp.*, 495 F.2d at 471 (2d Cir. 1974).

This case was taken entirely on a contingency fee basis, meaning that if the case did not succeed, Class Counsel would receive no payments for their efforts. Although in hindsight Class Counsel was able to achieve a substantial recovery for the Class, the reality is that Defendants – after expressing an early interest in settlement – never made a reasonable settlement offer until the close of discovery, forcing two years of litigation in which Plaintiffs were required to diligently pursue defendants even for such simple matters as determining the identity of the Class Members, because of defendants' lack of recordkeeping.

In summary, at all phases of this litigation, there was a significant risk that there would be little or no recovery, and that Class Counsel would receive no compensation for time and out-of-pocket costs associated with three years of hard-fought class action litigation. Therefore, this factor points strongly toward approving the requested fees and costs.

### D.  Class Counsel provided excellent representation.

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Guzman v. Joesons Auto Parts*, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) (citations omitted). A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's past experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for plaintiff. Id. (citations omitted).

As discussed *supra*, Class Counsel has achieved a fair, reasonable, and adequate recovery for Plaintiffs. Weighing the benefits of the settlement against the risks associated

with proceeding in the litigation, the settlement is reasonable.  Plaintiff spent years pursing Defendants' records, undertaking and responding to discovery, and successfully certifying this case as a class action for litigation purposes rather than merely conditionally certifying it for settlement purposes, thus enabling the Class to benefit from all of Class Counsel's work.  Consequently, Class Counsel should be awarded the requested fees.

### E.  The requested fees are reasonable in relation to the settlement.

Class Counsel's attorneys' fees request of $457,943.22 (or 33.3% of the net Settlement Amount) is within the range of what Courts in this Circuit have routinely awarded (i.e., between thirty and thirty-three percent (30-33%) of the settlement fund) as attorneys' fees in wage and hour cases. See, e.g., *Thornhill v. CVS Pharmacy, Inc.*, 2014 U.S. Dist LEXIS 37007, at *7-8 (S.D.N.Y. March 20, 2014) (noting that, "[i]n this Circuit, courts typically approve attorneys' fees that range between 30 and 33 percent" and citing cases) (citing *Guzman v. Joesons Auto Parts*, 2013 U.S. Dist. LEXIS 83342, 2013 WL 2898154, at *4 (E.D.N.Y. June 13, 2013) (collecting cases)); *Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.").

Similarly, Class Counsel's attorneys' fees request is in line with decisions from across the country that have awarded one-third or more in wage-and-hour settlements. See, e.g., *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 2013 WL 5745102, *1 (W.D. Wis. Oct. 23, 2013) (awarding class counsel 1/3 of the settlement fund for Hybrid FLSA and Rule 23 Class Action wage and hour case); *Rotuna v. West Customer Mgmt. Group, LLC*, 2010 WL 2490989, *7-8 (N.D. Ohio June 15, 2010) (one-third).

Class Counsel's requested fees of $457,943.22 or 33.3% of the net Settlement Fund are therefore "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts*

*Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. March 24, 2008)(awarding 1/3 of $450,000.00 common fund).  Accordingly, this factor weighs in favor of approval of the requested fees.

### F.  Public policy supports approving the requested fees.

In wage-and-hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011).  The FLSA and NYLL serve important remedial purposes. The FLSA "was designed 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). Similarly under the NYLL, the wage and hour laws were passed in part to eliminate "unfair competition against other employers" and avoid injury to the "overall economy." NYLL § 650. These goals can only be fulfilled if the lawyers who seek to prosecute violations under these laws are adequately compensated. Otherwise, violations of the FLSA and NYLL would go unremedied, an undesirable result for both the affected workers and society at large. See *Sand v. Greenberg*, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("[Fees] are not meant to compensate plaintiffs, but rather to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.")

Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Id. citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980). Attorneys who fill the private attorney general role must be adequately compensated for their efforts. Id. If not, wage and hour abuses would

go without remedy because attorneys would be unwilling to take on the risk. *Id., citing Goldberger* 209 F.3d at 51 (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and [state wage and hour laws]. Id.

In this case, Class Counsel devoted over two and a half years to the litigation of this matter, along with considerable financial resources. The requested fee, which is being paid over a six year period along with the class members' recovery, is necessary to incentivize qualified attorneys to assume the risks attendant in this kind of litigation. Where risk is involved, lodestar alone is inadequate because it fails to account for the prospect of a loss. There is no reason for counsel to take cases on a contingent basis if, at the end of the day, all they can hope to recover is their hourly rate, and only on cases that they win. In such a system, paying hourly clients would always be preferred. Accordingly, to appropriately incentivize qualified attorneys to take these kinds of cases on a contingent basis, the fees must reflect the risk undertaken.  Based upon the negotiated fee agreement in this case, the typical percentage of compensation in similar cases in this Circuit and nationwide, and the *Goldberger* factors, Class Counsel is entitled to a reasonable attorneys' fees award of thirty percent (33%) of the net Settlement Fund.

### G. Class Counsel is entitled to reimbursement of reasonable litigation costs.

It is well-settled in this Circuit that "attorney's fees awards include those reasonable out- of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc- Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). See also *Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933-34 (2d Cir.1987) ("Identifiable out-of-pocket

disbursements for items such as photocopying, travel, and telephone costs are generally taxable...and are often distinguished from non-recoverable routine office overhead, which must be absorbed within the attorney's hourly rate."). Here, Class Counsel's fees incurred in prosecuting this action are a modest $1,170.34, and include filing fees, translation fees, postage, and travel costs, all of which were necessary to the prosecution of this action. Because such costs are reasonable and were incidental and necessary to the representation of the class, the Court should award Class Counsel reimbursement of their litigation costs of $1,170.34 in addition to their requested $457,943.22 fee award.

### H. The lodestar cross-check method supports approving the requested fees and costs.

Following Goldberger, the trend in the Second Circuit has been to apply the percentage method and to loosely use the lodestar method as a "cross check." *Goldberger*, 209 F3d at 50. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." Id. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

Courts then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); see also *Goldberger*, 209 F.3d at 47; *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2nd Cir. 1999).

Courts regularly award lodestar multipliers of up to eight (8) times lodestar, and in some cases, even higher multipliers. See, e.g., *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S Dist. LEXIS 22663, at **78- 79 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley,* 186 F. Supp. 2d at 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (5.3 multiplier "toward the high end of acceptable multipliers, it is not atypical for similar fee-award cases.")

Here, the lodestar sought by Class Counsel, approximately 6.35 times, is in the range granted by courts. (See Ex. C (Summary of Attorneys' Time Records).) While the multiplier represents a greater recovery than Class Counsel's lodestar, this should not result in penalizing Counsel for achieving a settlement rather than taking this case to trial. *See Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino*, 290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly"); *Savoie,* 166 F.3d at 461 (2d Cir. 1999)("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

In addition to the time already spent in bringing this action, Class Counsel anticipates that it will have to perform work after the final approval hearing, including answering class member questions and ensuring that the Settlement Fund is administered in accordance with the parties' agreement. This additional time, for which Class Counsel

will not seek further compensation, also supports Class Counsel's fee request. See *Sewel*, 2012 WL 1320124, at *13.

### VI.    The Settlement Administrator is Entitled to Payment for its Services.

Class Counsel respectfully moves the Court for an order to pay ALCS its fees in the amount of $32,317 – half of which is to come from the Settlement Amount and half directly from Defendants.   ALCS provided valuable services to the Class in administering the class notice process, and will also be providing the service of disbursing the settlement monies to the Class upon approval of the settlement, over a period of six years. The amount charged by ALCS is within the industry norm, and the Class should be responsible for paying those costs.

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully suggest that the Settlement Agreement is a product of an arm's-length negotiation among the parties and is a fair, adequate and reasonable resolution of a lengthy and hotly contested dispute. As such, this Court should grant Plaintiffs' Unopposed Motion for Final Settlement Approval, as well as approving an award of $457,943.22 for Class Counsel's attorneys' fees and costs, $32,317 for class administration expenses, and $3,500 each as service payments for Named Plaintiffs Philip Quow and Clyde Reaves. In light of the two and a half years of hard fought litigation and extraordinary outcome achieved as a result of the efforts of Class Counsel and the Class Representatives, these requests are reasonable and should be approved in full.

Respectfully submitted,

By: _____

23

SAMUEL & STEIN
David Stein (DS 2119)
38 West 32nd Street, Ste. 1110
New York, New York 10001
(212) 563-9884

Attorneys for Plaintiffs

Dated:  June 13, 2018